IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHARLES MITCHELL, ID # 09083221, | ) | |
|     Plaintiff, | ) | |
| vs. | ) | No. 3:10-CV-0030-K-BH |
| | ) | |
| ROEL CERVANTES, et. al,[1] | ) | |
|     Defendants. | ) | Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court are *Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity* ("Defs.' Mot."), filed April 23, 2010, (doc. 22), and Plaintiff's *Motion to Suppress Medical Records* ("Pl.'s Mot."), filed June 29, 2010, (doc. 30). Based on the relevant filings and applicable law, both motions should be **DENIED**.

### I. BACKGROUND

Plaintiff sues two guards from the Dallas County Jail ("the Jail") under 42 U.S.C. § 1983 for alleged use of excessive force.

On December 21, 2008, Plaintiff was booked into the Jail for a parole violation. (*See* Ex. 1A, attached to Defs.' App.) On January 17, 2009, a brief fight between two inmates caused guards to intervene and escort the inmates from the tank. (Aff. Mitchell at 3, attached to Pl.'s Mot.) Two guards arrived to investigate, and one threatened a search, or "shakedown", when the inmates would not cooperate. (*Id.*) Fifteen to twenty minutes later, ten guards arrived to shakedown the prisoners and area. (*Id.* at 4.)

---

[1] The Clerk of the Court shall correct the spelling of the defendants' last names on the docket sheet to "Cervantes" and "Dominguez". (*See* Answer at 1.)

According to Plaintiff, the inmates complied with instructions to get on their knees, cross their ankles, put their hands behind their head with fingers locked, and place their elbows against the wall. (*Id.*) He neither moved nor spoke. (*Id.*) Officer Cervantes shouted "Didn't I say no talking" and smashed Plaintiff's face into the wall and twisted his arm. (*Id.*) Officer Dominguez helped escort Plaintiff out of view of the other inmates, and the two officers then slammed him into walls and doors before taking him to the ground. (*Id.* at 4-5.) While they had him on the ground, they struck him in his sides with their knees. (*Id.* at 5.)

According to Defendants, Plaintiff "was loud, belligerent, and refused to follow orders." (Aff. Cervantes at 3, attached as Ex. 2 to Defs.' App.; *accord* Aff. Dominguez at 2-3, attached as Ex. 3 to Defs.' App.) After Plaintiff ignored warnings to comply with their directions, Sergeant Shaddox directed them to remove him from the room. (Aff. Cervantes at 3; Aff. Dominguez at 3.) As Officers Cervantes and Dominguez escorted Plaintiff, he jerked away from Officer Cervantes, and the officers took him to the ground. (Aff. Cervantes at 3; Aff. Dominguez at 3.) Both officers deny using any force other than taking Plaintiff to the ground and using a reverse wrist lock while escorting him. (Aff. Cervantes at 3-4; Aff. Dominguez at 4.)

On April 23, 2010, Defendants moved for summary judgment based upon qualified immunity on grounds that the evidence fails to show that they violated Plaintiff's constitutional rights or that they acted objectively unreasonable in light of the clearly established law in January 2009. (Defs.' Mot. at 2; Defs.' Br. at 2-9.) Plaintiff has filed a response and moved to suppress medical records submitted by defendants (*see* Pl.'s Mot.), and the issues are now ripe for determination.

## II. MOTION TO SUPPRESS

Plaintiff moves to suppress his medical records under the Health Insurance Portability and

Accountability Act ("HIPAA"), 45 C.F.R. § 164.512(e), because he did not consent to their disclosure. (*See* Pl.'s Mot. at 7-8, Pl.'s Br. at 4.)

Congress passed HIPAA "to ensure an individual's right to privacy over medical records." *United States v. Zamora*, 408 F. Supp. 2d 295, 298 (S.D. Tex. 2006). Section 164.512(e) permits disclosure of medical records for judicial and administrative proceedings when a covered entity responds to a court order or to "a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court." This section creates a procedure for obtaining medical records and authority to use them in litigation as well as an opportunity to object to their disclosure.[2] *Nw. Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 926 (7th Cir. 2004). It creates no "privilege against production or admission of evidence", however. *United States ex rel. Camillo v. Ancilla Sys., Inc.*, 233 F.R.D. 520, 522 (S.D. Ill. 2005).

Here, Defendants sent Plaintiff a letter on February 26, 2010, stating their intent to subpoena his medical records on March 5, 2010. (*See* Letter from Ardolf to Mitchell (attached as part of Ex. A to Notice to Court, doc. 18).) He received it on March 2, 2010. (*See* Ex. A.) On March 10, 2010, Defendants subpoenaed the medical records, attached a copy of the February 26 letter, and informed the custodian of records that Plaintiff had made no objections. (*See* Ex. B to Notice to Court.) Plaintiff objected generally to the disclosure of his medical records in a "Notice of Objection" dated March 9, 2010, that was received two days later in a prior case against the same defendants that had been dismissed for want of prosecution in November 2009.

Disclosure of medical records does not violate any privilege of confidentiality or HIPAA

---

[2] Section 164.512(e)(1)(ii) conditions non-court ordered disclosure upon the producing entity receiving satisfactory assurance as defined in paragraphs (iii) and (iv) "that reasonable efforts have been made" to either (A) ensure that the relevant individual "has been given notice of the request" or (B) obtain "a qualified protective order".

3

when there is compliance with § 164.512(e), and disclosure in these circumstances provides no basis to suppress their use. *See United States v. Bek*, 493 F.3d 790, 802 (7th Cir. 2007). Accordingly, the motion to suppress should be denied, and the medical records may be used for purposes of this litigation.

### III. SUMMARY JUDGMENT STANDARD FOR QUALIFIED IMMUNITY CASES

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

Typically, a movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In the context of § 1983 litigation, however, governmental employees asserting the defense of qualified immunity in a motion for summary judgment need only assert the defense in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Examiners*, 204 F.3d 629, 633-34 (5th Cir. 2000).

The burden then shifts to the non-movant to show that the defense does not apply. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The non-movant must identify specific evidence in the record

4

and show how it presents a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).[3] Although courts view the evidence in a light most favorable to the non-movant, *Anderson*, 477 U.S. at 255, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence'", *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc)). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

## IV. QUALIFIED IMMUNITY

Defendants move for summary judgment on grounds that they are protected from suit by qualified immunity. (*See* Defs.' Br. at 3-7.)

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

---

[3] Courts generally liberally construe a *pro se* plaintiff's pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). They have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment", however. *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

5

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, court consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Defendants have carried their summary judgment burden by asserting their qualified immunity defense. *See Gates*, 537 F.3d at 419. The burden now shifts to Plaintiff to produce evidence showing that Defendants violated his constitutional rights and that the violation was objectively unreasonable under clearly established law at the time of the violation. *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407-08 (5th Cir. 2007).

## A. Constitutional Violation

### 1. *Applicable Standard*

Plaintiff's excessive force claims arise under either the Eighth or Fourteenth Amendments, depending on whether he was a pretrial detainee or a convicted prisoner at the time of the alleged

excessive force.[4] *See Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). The standard is the same under both amendments. *See id.* In an excessive force case, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."[5] *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *accord Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (emphasizing that the inquiry is "not whether a certain quantum of injury was sustained"). This inquiry has two components – an objective one that focuses on whether the alleged wrongdoing was harmful enough to violate the Constitution and a subjective one that focuses on the mental state of the alleged wrongdoer. *Hudson*, 503 U.S. at 7-8.

When considering the objective component, courts must look to the nature of the force used, i.e., "whether it was nontrivial", not the extent of the injury sustained. *Wilkins*, 130 S. Ct. at 1179 & n.2; *accord Hudson*, 503 U.S. at 8-10. Excessive force "necessarily excludes . . . *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted).

Because there is often no specific evidence of the official's subject intent, the subjective component may require consideration of objective factors, including (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the

---

[4] Because he was arrested for an unspecified parole violation, Plaintiff's status is unclear. *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (recognizing that when parolees are arrested on a subsequent crime, they are like pretrial detainees to some extent because they have "a due process right to be free from punishment for the subsequent crime until convicted of the subsequent crime").

[5] Defendants' claim that Plaintiff must show an "objectively unreasonable" use of force that was "clearly excessive" to the need, (*see* Defs.' Br. at 4), invokes the Fourth Amendment. *See Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382-83 (5th Cir. 2009) (Fourth Amendment standard requires "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable"). Because "the Fourth Amendment is not so capacious or elastic as to cover pretrial detention three weeks after the initial arrest," *see Valencia v. Wiggins*, 981 F.2d 1440, 1443-45 (5th Cir. 1993), it does not apply to an alleged use of excessive force approximately one month after Plaintiff was booked into jail.

amount of force used; (4) the threat reasonably perceived by the responsible officials; (5) any efforts to temper the severity of a forceful response; and in some cases, (6) a need "to act quickly and decisively". *Valencia*, 981 F.2d at 1446-47 & n.2; *Wilkins*, 130 S. Ct. at 1178 (noting that the extent of the injury is a factor as to whether the officers could have plausibly thought the force was necessary in the given situation and an indicator of the amount of force applied). These factors are "not exclusive; each case must be judged on its own facts." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). When there is no legitimate purpose for the officers' conduct, malicious and sadistic intent may be inferred from their conduct alone. *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006).

### 2. *Excessive Force*

To carry his summary judgment burden, Plaintiff presents evidence[6] that he complied with the officers' directions and neither moved nor spoke, but that Officer Cervantes smashed his face into the wall and twisted his arm without provocation. He also presents evidence that while they were escorting him to a different cell, Officers Cervantes and Dominguez slammed him into walls and doors before taking him to the ground and then kneed him in both sides. Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to the circumstances surrounding the officers' use of force. His evidence is sufficient to support a resolution of the factual issue in his favor. *See Anderson*, 477 U.S. at 249.

Where the evidence raises a genuine issue of material fact, courts "assume plaintiff's version of the facts is true, then determine whether those facts suffice for a claim of excessive force under

---

[6] Plaintiff's sworn complaint may serve as competent summary judgment evidence "to the extent that it comports with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994); *accord Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006). Plaintiff also submitted an affidavit in support of his claims when he responded to Defendants' motion for summary judgment. (*See* Aff. Mitchell.)

[the] circumstances." *Wagner v. Bay City, Tex.*, 227 F.3d 316, 320 (5th Cir. 2000). Plaintiff's version of the facts suffices to show that the Defendants used excessive force against him. His proffered facts support a finding that their use of force was not a good-faith effort to maintain or restore discipline, and that the level of force was nontrivial. Because the officers had no apparent legitimate purpose for their conduct under Plaintiff's version of the facts, the fact-finder may infer malicious and sadistic intent.

Defendants contend that the medical records conclusively establish that Plaintiff's constitutional rights were not violated.[7] (*See* Defs.' Reply at 1.) A medical record dated January 18, 2009, shows that Plaintiff was brought to clinic after an altercation with officers and the nurse noted: "[Patient] denies any injuries. No visible injuries noted at this time. [Patient] looks in no distress [or] discomfort." (Defs.' App. at 43.) A "Sick Call Request" dated January 27, 2009, shows that Plaintiff then complained of "chipped and fractured bones in [his] wrist, elbow, shoulder, collar bone, [and] leg plus injuries to [his] back, right ribs, and left kidney area." (*Id.* at 58.) A medical record dated three days later shows a left elbow x-ray was ordered following complaints of left shoulder and elbow pain caused by an altercation with guards. (*Id.* at 60.) Sick Call Requests dated February 2 and 3, 2009, show that Plaintiff continued to complain about problems with his neck, back, and shoulder. (*Id.* at 67, 69.) An x-ray of February 4, 2009, shows Plaintiff's left elbow to be normal. (*Id.* at 71.) The medical record also shows that Plaintiff complained of neck, back, and head pain prior to the incident with the guards. (*See id.* at 37-41.) Although the medical record may show a lack of physical injury to Plaintiff or that the guards tempered the severity of their forceful

---

[7] Defendants assert that Plaintiff "must show that he sustained a physical injury" to state a claim of excessive force. (Defs.' Br. at 7 (citing 42 U.S.C. § 1997e(e).) Section 1997e(e) only limits an inmate's remedies "for mental or emotional injury suffered while in custody without a prior showing of physical injury"; it does not add an element to any type of claim or impact a qualified immunity analysis.

response, these two factors do not conclusively establish a lack of malicious or sadistic intent or that Defendants used nontrivial or *de minimis* force in light of Plaintiff's summary judgment evidence.

Pointing to the medical record and their sworn version of the facts, Defendants also argue that Plaintiff's version is so contrary to the evidence that it may be ignored under *Scott v. Harris*, 550 U.S. 372 (2007). (*See* Defs.' Reply at 5-6.) The plaintiff's version of events in *Scott* was contradicted by a videotape of the relevant events. *See* 550 U.S. at 380-81. The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Here, although the parties' affidavits contradict each other and the medical record does not show a physical injury or an immediate complaint of injury from the altercation, conflicting affidavits are not enough to invoke the *Scott* exception to the general rule that evidence is viewed in a light most favorable to the non-movant. *See Sanchez v. Fraley*, No. 09-50821, 2010 WL 1752123, at *4-5 (5th Cir. Apr. 30, 2010) (finding that *Scott* did not allow the court to disregard conflicting deposition testimony). Further, as noted, the Supreme Court has made clear that the core inquiry focuses on the force exerted, not the extent of the injury sustained. *See Wilkins*, 130 S. Ct. at 1179 & n.2. While the medical record may be relevant to the Plaintiff's credibility, credibility determinations are inappropriate on summary judgment. *Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005).

Plaintiff has presented sufficient summary judgment evidence to create a genuine issue of material fact as to the circumstances that led to the Defendants' use of force against him in January 2009. Under his version of the facts, a reasonable jury could find that the guards violated his constitutional rights by using excessive force against him.

**B. <u>Objective Reasonableness in Light of Clearly Established Law</u>**

To show the inapplicability of the asserted qualified immunity defense, Plaintiff must also present evidence to show that the violation of his constitutional rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Zarnow*, 500 F.3d at 407-08.

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice – in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) (discussing both scenarios); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (discussing both scenarios). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

At the time of the January 2009 incident, it was clearly established that prison officials could not maliciously and sadistically apply force to cause harm to a prisoner or pretrial detainee. *See Hudson*, 503 U.S. at 7-10 (prisoner); *Valencia*, 981 F.2d 1446 (pretrial detainee). Since *Hudson* and *Valencia*, it would have been clear to a reasonable officer that smashing an inmate's face into a wall,

11

twisting his arm, and slamming him into walls and doors before taking him to the ground and kneeing him in both sides was unlawful when the inmate had complied with all directions, had neither spoken nor moved, and had given the officers no reason to apply any force. Under Plaintiff's version of the facts, a fact-finder could find that the officers' actions were not objectively reasonable in light of clearly established law at the time.

In summary, Plaintiff has provided competent summary judgment evidence sufficient to create a genuine issue of material fact regarding the events in January 2009. His version of the facts, which the Court must take as true for purposes of this motion, suffices to support a finding that Defendants violated his constitutional rights by using excessive force against him and that the violation was objectively unreasonable under clearly established law at the time of the violation. The disputed, material facts regarding the use of force preclude "the Court from granting summary judgment on the ground of qualified immunity." *Estate of Henson v. Wichita Cnty., Tex.*, 652 F. Supp. 2d 730, 748 (N.D. Tex. 2009). Defendants' motion for summary judgment should therefore be denied.

## V. CONCLUSION

*Defendants' Motion for Summary Judgment on the Issue of Qualified Immunity*, filed April 23, 2010, (doc. 22), and Plaintiff's *Motion to Suppress Medical Records*, filed June 29, 2010, (doc. 30) should be **DENIED**.

**SO RECOMMENDED on this 12th day October, 2010.**

*[signature]*
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE